UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NATHANIEL JAMAR HUDSON,

                    Petitioner,                    Case No. 1:07-cv-914

v.                                                 Honorable Janet T. Neff

KENNETH McKEE,

                    Respondent.
_____/

### REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2241, which must be considered by this Court as a petition under 28 U.S.C. § 2254.[1]  Promptly

after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the

petition to determine whether "it plainly appears from the face of the petition and any exhibits

annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, RULES

GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.

Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen

---

[1]Petitioner has filed his petition under § 2241, challenging the loss of good-time credits resulting from a misconduct conviction. The Sixth Circuit, however, squarely has recognized that a state prisoner seeking post-conviction relief from a federal court has but one remedy: an application for a writ of habeas corpus. *See Rittenberry v. Morgan*, 468 F.3d 331, 336-37 & n.3 (6th Cir. 2006).  "All such applications for writs of habeas corpus are governed by § 2241, which generally authorizes federal courts to grant the writ – to both federal and state prisoners.  However, most state prisoners' applications for writs of habeas corpus are subject also to the additional restrictions of § 2254.  If a state prisoner is 'in custody pursuant to the judgment of a State court,' his petition is subject to § 2254. If, however, a prisoner is incarcerated pursuant to something other than a judgment of a state court, such as a pre-trial bond order, then his petition is not subject to § 2254." *Medberry v. Crosby*, 351 F.3d 1049, 1062 (11th Cir. 2003).  As the Sixth Circuit observed in *Greene v. Tenn. Dep't of Corr.*, 265 F.3d 369, 371 (6th Cir. 2001), § 2254 is the correct vehicle for contesting loss of good time credit in prison disciplinary proceedings. *Id.* (citing cases).  The procedural requirements applicable under § 2254 also apply to petitions brought pursuant to § 2241. *Id.*; *Rittenberry*, 468 F.3d at 337.

out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, I recommend that the petition be dismissed because it plainly appears that Petitioner is not entitled to relief in this Court.

### Facts & Procedural History

Petitioner presently is housed at Bellamy Creek Correctional Facility (IBC).  He is serving a term of 18-to-30 years on a conviction for second-degree murder, MICH. COMP. LAWS § 750.317, together with a 2-year consecutive sentence for possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b.  In his habeas application, Petitioner alleges that he was deprived of good-time credits in violation of his right due process by two separate prisoner misconduct hearings.[2]

In his first claim, Plaintiff alleges that on August 7, 2007, he approached Assistant Resident Unit Supervisor Lisa English about the mailing of expedited legal mail.  She advised him that she was confiscating some of his mail, as it appeared to be in violation of policy prohibiting possession of materials involving the Uniform Commercial Code.  Petitioner states that he reminded her that the policy had been struck down in *Jones v. Mich. Dep't of Corr.*, No. 05-CV-72817-DT, 2006 WL 2805643 (E.D. Mich. Sept. 28, 2006), but she told him she was taking the property anyway.  According to Petitioner, English ordered him to go to his cell, advising him that if he

---

[2]Pursuant to Rule 2(e), RULES GOVERNING § 2254 CASES, "[a] petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court."  *Id.*  In his petition, however, Petitioner raises habeas claims arising out of separate charges of major misconduct, which were heard by different hearing officers on different occasions.  Under Rule 2(e), the two challenges should be brought in individual petitions.  However, in light of the fact that one of the convictions is exhausted while the other is not and neither is meritorious, I will, for the sake of judicial economy, address both of Petitioner's misconduct challenges on the merits.

refused, he would be placed in the "hole."  Petitioner claims he left momentarily, but returned to explain the nature of the documents.  English allegedly called the warden's acting assistant, W.A.A. Bell, who told her to confiscate the material.   Petitioner acknowledges that he became agitated and threatened English with criminal prosecution for stealing his property.  English then pushed the duress button in her office.

Petitioner alleges that he promptly left English's office, where he was immediately confronted by Sergeant Brooks.  Petitioner alleges he attempted to explain the situation and demanded Brooks contact his supervisor and the state police.  Other officers began to arrive. Petitioner claims he began to experience "duress and emotional turmoil" and that he was in fear for his life or safety.  Brooks ordered staff to "take [Petitioner] down."  Petitioner alleges that various officers then assaulted him in their attempts to aid English in her conspiracy.  After handcuffing Petitioner, the officers carried him away, ostensibly by the handcuffs, resulting in nerve damage to his right wrist.  He was placed in the "hole."

Petitioner has attached extensive documentation of the misconduct charges filed, the critical incident reports prepared, and the documentation he submitted in defense of the misconduct charges. (See Pet. Ex. A.)  Three officers involved in the incident filed misconduct charges against Petitioner for disobeying direct orders and assaulting officers.  Petitioner did not dispute that he disobeyed orders and assaulted officers.  He defended on the grounds that English's unlawful treatment of his mail caused him to go into a "manic" state, which in turn caused him to react in the manner he did.  He attempted to introduce evidence of his mental health taken from his competency evaluation conducted in February 1997.  The hearing officer declined to consider the information as it was not relevant to the hearing because of its age.  The hearing investigator also declined to

allow testimony from a prison psychologist who had previously treated Petitioner because Petitioner had not been on the prison's psychiatric case load for over one year and was not taking psychotropic medications. Nevertheless, the hearing investigator obtained an evaluation from Jessica Perry, a member of the psychiatric treatment team, who determined the Petitioner was responsible for his behavior. *Id.*

Petitioner was found guilty of misconduct and lost good time credits. According to the allegations of the petition, Petitioner filed a notice of rehearing on the misconduct, to which he has not yet received a response because, he alleges, such rehearings take approximately eight months.

The petition raises a second claim, in which Petitioner challenges the outcome of an earlier misconduct hearing. On December 8, 2006, Petitioner was convicted of insolence and disobeying a direct order. Although the petition does not recite the basis for the misconduct conviction, the attachments to the petition indicate that Petitioner was cited for both offenses as a result of an incident in the dining hall on November 14, 2006. Petitioner was ordered by a corrections officer to dump his tray and to leave the kitchen area. Petitioner apparently looked directly at the officer and then continued to eat. The order was repeated and Petitioner kept eating. When the officer finally asked for identification, Petitioner called the officer a racist and told him to write the ticket. At the hearing, Petitioner argued that he was entitled to eat his meal in a "leisurely" fashion and that the officer acted inappropriately in ordering him to leave the dining hall. Petitioner also contends that his due process rights were violated by the hearing officer's refusal to consider a witness' statement. He further argues that the misconduct charges were motivated by racial animus. The misconduct report is attached as Exhibit B to his petition.

Petitioner sought rehearing of his misconduct petition on December 22, 2006.  The

rehearing was disapproved and the misconduct affirmed on August 22, 2007.  No state-court appeal

was filed.

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB.

L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 791 (2001).  The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has

"drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir.

2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant

to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits

in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d

at 655.  This Court also may not consider decisions of lower federal courts in determining whether

the state decision is contrary to, or an unreasonable application of, clearly established federal law.

*Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  Thus, the inquiry is

"limited to an examination of the legal landscape as it would have appeared to the Michigan state

courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

-6-

**Discussion**

I.      Exhaustion of State Court Remedies

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

 The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.  "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel."  *Rockwell v. Yukins*, 217 F.3d 421, 423-24 (6th Cir. 2000).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report is received.  MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶

-7-

DDD (effective Jan. 1, 2007). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). An aggrieved prisoner may seek leave to appeal to the state court of appeals, MICH. CT. R. 7.203(B), and supreme court, MICH. CT. R. 7.301(A)(2). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[3]

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Although Petitioner does not directly address the exhaustion requirement, he alleges that he sought rehearing of his December 8, 2006 misconduct conviction, which was denied on August 22, 2007. No state-court appeal was filed. Petitioner argues that he is barred from filing an appeal in state court because he cannot pay the filing fee. He therefore contends that further state-court remedies are unavailable on the December 2008 conviction. With respect to the August 7, 2007 misconduct charges, in contrast, Petitioner acknowledges that he has not yet received a response on his request for rehearing of the misconduct convictions. Instead, he merely asserts that he is entitled to a speedy remedy and requiring exhaustion would impair a speedy result.

Although Petitioner provides no evidence in support of his claim that a state-court appeal is unavailable, I will assume without deciding that Petitioner's state-court remedies are exhausted concerning the December 2006 misconduct conviction. I reject, however, Petitioner's sweeping assertion that he need not attempt to exhaust his state-court remedies with respect to his

---

[3]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser*, 411 U.S. at 487-88. However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

August 2007 misconduct charges simply because he prefers not to await resolution of the rehearing process. Petitioner's state-court remedies clearly are not exhausted with respect to his August 2007 misconduct charges.

An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust his state court remedies. 28 U.S.C. § 2254(b)(2). Because Petitioner's grounds for relief patently are without merit, I recommend denial of the petition without requiring exhaustion.

II.   Merits

With respect to both misconduct convictions, Petitioner asserts that Respondent deprived him of due process in violation of the Fifth and Fourteenth Amendments, causing him a loss of good time credits. The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. The right to call witnesses or present evidence, however, is not absolute. *Id.* at 566. The United States Supreme Court explained:

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some
> amount of flexibility and accommodation is required. Prison officials must have the
> necessary discretion to keep the hearing within reasonable limits and to refuse to call
> witnesses that may create a risk of reprisal or undermine authority, as well as to limit
> access to other inmates to collect statements or to compile other documentary

> evidence.  Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Id.*  Nevertheless, courts have restricted the use of confidential information in *Wolff*-type disciplinary hearings. *Falkiewicz, v. Grayson,* 271 F. Supp. 2d 942, 950 (E.D. Mich. 2003) (citing *Ponte v. Real,* 471 U.S. 491, 499-500 (1985), and *Hensly v. Wilson*, 850 F.2d 269, 276-83 (6th Cir. 1988))), *aff'd,* 110 F. App'x 491 (6th Cir. 2004).

"[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)).   In *Hill,* the Supreme Court held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits.  *Hill*, 472 U.S. at 455.  In determining whether a decision of a prison disciplinary board is supported by "some evidence," a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence."  *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455).  "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added).  Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding. *Hill,* 472 U.S. at 456; *see also Falkiewicz,* 271 F. Supp. 2d at 948.  A hearings officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilt was the only reasonable interpretation of the evidence. *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)).  Further, "this court

will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz*, 271 F. Supp. 2d at 948 (citing *Turney v. Scroggy*, 831 F.2d 135, 139-40 (6th Cir. 1987)).

A.    August 7, 2007 Misconduct Charges

In his first claim, Petitioner alleges that Defendants improperly conspired to deprive him of his legal property, causing him to lose his temper.  He argues that, because English acted without legal authority to keep his property, the officers had no authority to order him to leave.  He therefore appears to argue that his loss of temper was understandable and his disobedience of the officers' orders was reasonable.  He further suggests that the stress of the unfair treatment caused him to enter a "manic" state and to lose his recollection of his conduct.

Petitioner does not dispute that the MDOC satisfied the first and third due process requirements of *Wolff* in Petitioner's case.  *See Wolff*, 418 U.S. at 563-69.  Petitioner concedes both that he received notice of the hearing and that he received a written report of the hearing, which detailed the evidence relied on by the hearings officer and the findings of the hearings officer.  He further does not seriously dispute that he received the opportunity to submit documentary evidence, including his extensive statement and questions for staff.  Petitioner suggests, however, that the second prong of *Wolff* was not met because the hearing officer improperly failed to consider his ten-year-old psychological evaluation and failed to call as a witness for Petitioner a mental health provider whom Petitioner had not seen in over a year.  He also complains that the hearing investigator impermissibly failed to require staff to answer questions submitted by Plaintiff.

"Prisoners do not have an absolute, unfettered right to present evidence at misconduct hearings." *Falkiewicz*, 271 F. Supp. 2d at 948.  Prison officials retain discretion "to keep the hearing

-11-

within reasonable limits . . . ." *Wolff*, 418 U.S. at 566.  The Supreme Court expressly recognized the authority of prison officials to limit evidence on the grounds of relevance.  *Wolff*, 418 U.S. at 566.

Here, the interrogatories submitted by Petitioner were deemed irrelevant because they were directed at the officers' beliefs about Petitioner's true intent, e.g., whether the officers believed Petitioner's emotional state was caused by an extreme state of emotion that escalated out of control or whether Petitioner demonstrated a true intent to harm staff.  Prison officials reasonably limited Petitioner's requests for answers to interrogatories to information related to his guilt or innocence on the misconduct charges.  In requesting the information, Petitioner was not seeking to dispute the charges that he had disobeyed orders and assaulted staff.  Instead, Petitioner sought only to explain why he was not as culpable as he might have been had he really wanted to harm officers.  The information unquestionably was irrelevant to his guilt or innocence, as the officers' subjective beliefs concerning petitioner's state of mind were not probative of any issue in dispute.  Answers to those questions were not required by *Wolff*.

Similarly, the denials of Petitioner's requests to introduce a ten-year-old psychological evaluation and testimony from a psychiatric provider who had not seen Petitioner in over a year were clearly reasonable, as the evidence was too remote to be relevant.  That determination is particularly reasonable because the hearing investigator sought a new psychological evaluation shortly after the incident.  Furthermore, state law does not absolve prisoners of liability for misconduct because they were under emotional stress, and the federal courts have never held that the Constitution requires recognition of such a defense.  One may safely presume that many prisoners have some history of emotional instability, and that much of prison life is stressful.  In the context

-12-

of maintaining order in the volatile prison atmosphere, the states are reasonable in refusing to entertain such issues in disciplinary hearings.

Finally, the evidence submitted by Petitioner indicates that one witness identified by Petitioner, Prisoner (unknown) Woodruff, declined to give evidence at the misconduct hearing, stating, "I don't even know who that is." (Pet. Ex. A.) As a result, any claim that Petitioner's efforts to present witnesses was impaired with respect to Woodruff is meritless on its face.

In sum, the record clearly indicates no violation of Petitioner's due process rights occurred during the misconduct proceedings on the August 7, 2007 misconduct charges.

In addition, the record indicates that ample evidence existed to support the hearing officer's determination that Petitioner was guilty of disobeying a direct order and assaulting staff. Petitioner attaches all three major misconduct reports written by various officers involved in the incident. First, Officer English reported that, after she told Petitioner she was confiscating his mail for possible UCC material inspection, Petitioner became highly agitated, fists clenched, yelling, standing close to her desk and demanding his mail back. He refused to leave. She then pushed the panic button to call for assistance. She attested that Petitioner had disobeyed a direct order and caused fear and alarm by his aggressive conduct. Officer McQuade reported that after Petitioner threatened Officer English, he was told four times to turn around to be restrained. Petitioner refused all four times to comply and then hit McQuade with both fists in the upper chest. When McQuade attempted to defend himself, he injured his left hand. After additional staff arrived at the scene, Petitioner was restrained and taken to Unit #8. Officer Suya, in turn, reported that Petitioner refused to follow staff instruction to quit resisting and that Petitioner struck Suya in the middle chest area with his closed fists. Petitioner also pushed Suya in the shoulder, as Suya attempted to control

-13-

Petitioner.  Suya reported that multiple officers were required to bring Petitioner to the ground so that he could be cuffed.  (Pet. Ex. A.)

In addition to the officers' statements contained in the misconduct reports, a critical incident report was completed by Lt. J. Frank, detailing the statements from the remaining officers, which indicated that, after being handcuffed, Petitioner continued to resist and attempted to break away.  He was then carried to Housing Unit #8 by six officers, accompanied by a sergeant.  After Petitioner was placed in temporary segregation, a nurse was sent to the housing unit to examine a minor injury to Petitioner's right wrist caused by the handcuffs.  The hearing investigation also included witness statements from Officers Brooks, Guile, Camp, Hulander, Staley, Mills, and Hall, who provided corroborating details concerning the incident and Petitioner's resistance.  (Pet. Ex. A.)

Such evidence is more than ample to support a misconduct conviction under the standard set forth in *Hill*, 472 U.S. at 455.  Indeed, Petitioner's own statements do not contest the basic charges that he refused to obey direct orders and assaulted officers.  Petitioner's complaints center on his claim that he was justified in objecting to English's confiscation of his mail.  Such allegations not only fail to cast doubt on the extensive evidence presented by the officers in support of the misconduct charges, they actually support the hearing officer's findings.  The evidence was overwhelming that Petitioner was guilty of the charged misconducts.

B.       November 14, 2006 Misconduct Charge

In the second part of his petition, Petitioner contends that the hearing officer's findings that Petitioner was guilty of the offenses of insolence and disobeying a direct order were not supported by "clear and convincing evidence."  He also claims that the hearing officer violated prisoner disciplinary policy by failing to make specific credibility determinations about his witness,

-14-

prisoner Lozano, who witnessed the incident.  Petitioner further contends that the hearing officer failed to address the witnesses' claims that reporting staff are racially discriminatory.

First, to the extent Petitioner bases his claim of error on prison disciplinary policy, his claim is not cognizable on habeas review.  The court may only entertain an application for habeas relief on behalf of a person in custody pursuant to the judgment of a State court in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  As a result, Petitioner's claim that state law required clear and convincing evidence and that policy required explicit discussion of the witnesses testimony are not properly before the Court.  Instead, the Constitution requires only that the hearing officer's determination be based on "some evidence."  *Hill*, 418 U.S. at 566.

Here, the hearing officer's determination is based on the statement of Officer Sutten, who reported that he told Petitioner to dump his tray and leave the dining hall.  Sutten stated that Petitioner unquestionably heard the order, looked directly at Sutten, and continued to eat.  Sutton repeated the order, but Petitioner continued to disobey.  Sutten then asked for Petitioner's state identification card, in order to write a misconduct report.  Petitioner responded that Sutten was a racist and that he had "better write the ticket."

In reaching his decision, the hearing officer stated that he had reviewed the misconduct report, together with the hearing investigation report, which contained both Petitioner's statement and that of witness Lozano.  The hearing officer expressly credited the complaining officer's testimony that he gave a direct order to Petitioner to dump his tray and leave the dining hall, but that Petitioner had failed to comply.  He also expressly rejected Petitioner's contentions that

-15-

prisoners were entitled to eat their meals in a "leisurely" manner.  The hearing officer concluded that Petitioner was required to comply immediately, not after multiple orders had been issued.  The hearing officer further credited the complaining officer's statement that Petitioner had reacted in anger to the orders.  Moreover, the hearing officer rejected Petitioner's defense that the officer spoke to him smugly and grimaced, finding that such conduct, if true, would not support Petitioner's assertion that the action was racially motivated.

        The charging officer's statement provides more than "some evidence" in support of the misconduct conviction.  *Hill,* 418 U.S. at 566.  This court is not required to conduct independent assessments of the credibility of witnesses or weigh the evidence.  *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455).  The question before this Court is whether there exists *"any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added).  Here, Petitioner's own explanation of the incident does not truly dispute the facts; it merely questions the fairness of the order issued.  As the hearing officer observed, Petitioner was required to obey the order as given and file a grievance thereafter to challenge the appropriateness of that order.  He was not simply free to disobey orders with which he did not agree.  I find the hearing officer's decision to be amply supported.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be summarily dismissed pursuant to Rule 4 because the petition lacks merit on its face.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:   October 9, 2007                           /s/  Joseph G. Scoville
                                                              United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).